Opinion issued March 29, 2012



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-11-00310-CR

———————————

Cleophus Roy Brown, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 208th District Court

Harris County, Texas



Trial Court Case No. 1150586

 



 

MEMORANDUM OPINION

          Appellant
Cleophus Roy Brown pleaded guilty to the offense of failing to comply with
registration requirements pertaining to sexual offenders.  See
Tex. Code Crim. Proc.
Ann. art. 62.102 (West 2007).  The trial court deferred adjudication of his
guilt and placed him on community supervision for three years.  The State subsequently moved to adjudicate
Brown’s guilt, alleging that he had violated the terms and conditions of his
community supervision by, among other things, frequenting a place where
children commonly gather.  Brown pleaded “not
true” to all allegations.  After a
hearing on the State’s motion, the trial court found true the State’s
allegation that Brown had frequented a place where children commonly gather.  The court granted the State’s motion, found
Brown guilty of the underlying offense of failing to comply with sex offender
registration requirements, and assessed his punishment at ten years in prison.  

          On
appeal, Brown contends that the trial court abused its discretion by granting
the State’s motion to adjudicate guilt.  We
affirm.

Background

          Brown
was placed on deferred adjudication community supervision in June 2008.  One of the conditions of his community
supervision was that he not go to or within 1,000 feet
of places where children commonly gather. 
At the hearing on the motion to adjudicate guilt, the gallery manager at
the Children’s Museum of Houston, Ashley Harris, testified that he saw Brown in
the museum once a week or every other week, usually on Sundays, for eight to
twelve months immediately preceding November 2008.  Though he could not recall specific dates, he
testified that he remembered seeing Brown at the museum in July 2008 and in the
second half of October 2008.  

Harris testified that approximately
3,000 children per day visit the Children’s Museum.  He explained that the museum has two types of
visitors, those who come for the museum’s exhibits and those who come for the
parent resource library, the gift shop, or the café.  Adults visiting the museum without children
are required to check in at the information booth and receive a “visitor”
sticker to wear.  Though adults
unaccompanied by children are required to sign a roster, the museum does not
retain the roster from month to month, and no such documentary evidence was
presented at the hearing.  Harris
testified that Brown came to the museum without children.  

In January 2009, Harris, who lives
near the museum, came across a photograph of Brown as he was conducting an
online search for registered sex offenders in his area.  He notified the executive director of the
museum and showed the picture to fellow museum employee Norma Contreras, who
also recalled having seen Brown at the museum. 
Approximately two weeks later, he reported this information to a Houston
police officer.  

Contreras also identified Brown in
court, and she testified that she checked him in at the museum’s information
desk, checking his identification and asking him to sign the roster.  She testified that she was “dead certain”
that Brown was there between June and October 2008.  She said, “I always knew that he was going to
the library.  I never even had to ask him.  He knew he handed me his ID.”  In response to a question from the trial
court, Contreras testified that the last time she saw Brown at the museum was
“at the most” three months before she saw his photograph on the computer in
January 2009.

          Brown
testified in his own defense that he was not at the Children’s Museum at any
time in 2008.  He said that he used the
library there in 2007 because the downtown library was closed and he had no
other access to a computer.

          The
trial judge found true the allegation that Brown was within 1,000 feet of a
place where children commonly gather, adjudicated him guilty of the underlying
offense, and assessed punishment at 10 years in prison.  Brown appealed, arguing that the State failed
to prove that the library at the Children’s Museum is a place where children
commonly gather or that he went there while he was on probation.  

Standard of Review

A revocation hearing is an
administrative proceeding, in which the State must prove by a preponderance of
the evidence that a defendant has violated a condition of his community
supervision.  Rickels, 202 S.W.3d at 763–64; Canseco v. State, 199 S.W.3d 437, 438
(Tex. App.—Houston [1st Dist.] 2006, pet. ref’d).  Appellate review of an order adjudicating
guilt is limited to determining whether the trial court abused its discretion.  Tex. Code Crim. Proc. Ann. art.
42.12, § 5(b) (West Supp. 2009) (“This determination [to adjudicate guilt] is
reviewable in the same manner as a revocation hearing conducted under Section
21 of this article in a case in which an adjudication of guilt had not been
deferred.”); Rickels,
202 S.W.3d at 763 (“Appellate review of an order revoking probation is limited
to abuse of the trial court’s discretion.”).  The trial court’s decision should be supported
by a preponderance of the evidence.  Rickels, 202 S.W.3d at 763.  The
evidence meets this standard when the greater weight of the credible evidence
creates a reasonable belief that a defendant has violated a condition of his
community supervision.  Id. at 764 (quoting Scamardo v. State, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974)).

We must examine the evidence in the
light most favorable to the trial court’s order.  Garrett v. State, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981).
 As the sole trier of fact, a trial court
determines the credibility of witnesses.  See id.;
Jones v. State, 787 S.W.2d 96, 97
(Tex. App.—Houston [1st Dist.] 1990, pet. ref’d).  To support the trial court’s order to adjudicate
guilt, the State need only establish one sufficient ground for revocation.  See
Moore v. State, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980) (stating that
one sufficient ground for revocation is enough to support trial court’s
decision); Canseco, 199 S.W.3d at 439
(holding that “a single violation is sufficient to support a revocation”).  

Analysis

          In
his first issue, Brown argues that the State did not prove by a preponderance
of the evidence that he was within 1,000 feet of a place where children
commonly gather.  He contends that “[a]ll of the evidence indicated that the library and the
museum were two separate locations.”  The
motion to adjudicate specifically alleged that Brown had frequented “the
Children’s Museum of Houston” since being placed on community supervision.  At the hearing, Harris testified that
approximately 3,000 children go through the museum per day.  Both Harris and Contreras testified that they
saw him in the Children’s Museum every week or every other week during 2008.

          In
his second issue, Brown further argues that the State did not prove that he was
present at the library during the period of his probation.  He relies in part on his own testimony that
he did not go to the Children’s Museum at any time in 2008 and that he used the
library there only in 2007, but it was for the court to assess the credibility
of the witnesses.  Garrett, 619 S.W.2d at 174.  Although neither recalled a specific date,
both Harris and Contreras testified that they remembered seeing Brown regularly
and frequently at the Children’s Museum during the period of his
probation.  

For
example, Harris testified:

Q.      And would you describe for the Court what time frame you saw
Cleophus Brown coming into the Children’s Museum?  What frequency?

          A.      Fairly frequent.  He would come on Sundays to our library.

          .
. . .

          Q.      Now, you said the last time you saw him
was November, 2008?

          A.      Yes.

Q.      And would you repeat, again, the time period he had been coming
up to November, 2008?  How many months
had it been, approximately?

A.      Before that, it was frequent, very frequent.  He would come either once a week or once
every other week.

Q.      Was this for six months, eight months, a
year approximately?  What would you say?

          A.      Eight months to a year.

Similarly, on direct examination, Contreras testified:

Q.      Would you tell the Judge, please, how you happen to recognize
this man and is it from the Children’s Museum?

          A.      Yes, ma’am.  He would visit our library often last year.

          Q.
     You mean, a year past from now or a
year past from January?

          A.      A year from January.

. . . .

Q.      Well, did you personally observe him at the Children’s Museum?

          A.      Yes, ma’am.

. . . .

Q.      About how often would you say Cleophus Brown came to the
Children’s Museum?

A.      For a while he was coming maybe every week.  Maybe on Sundays,
specifically, because I worked Sundays. 
Or maybe every other week.

          On
cross-examination, the defense attorney asked if she could testify about any
specific date when Brown was at the museum. 
Contreras said:

I know he’s been there.  I’ve seen him.  I personally checked him in.  I can’t tell you probably what I was wearing
last week of Tuesday, much less if a person was there a year ago.  I see thousands of people come in and
out.  I recognize faces.  I know if someone’s been there, but I can’t
tell you a specific date.  

 

The defense attorney further questioned her, saying:

Q.      Okay.  And so—and you
wouldn’t be, like, just telling this Court that you’re dead certain that—that
between June of 2008 and October of 2008, that between that time period that
you’re just dead certain he was there?

A.      I can say dead certain he was there because I recognize
him.  I always knew that he was going to
the library.  I never even had to ask
him.  He knew he handed me his ID.  I know what people are coming for, especially
if they don’t have kids.  

. . . .

THE COURT.        Let me ask you this
question:  Do you recall how long or how
much before you actually saw his picture on the Internet that you had seen
him?  It had [sic] be a month?  Two months? 
Three months?  Five months?  Do you have a recollection?

 

A.            
Probably a few months.  Three
months, at the most.

 

THE COURT.        Okay.  And when was that?  When did you see his picture?

 

A.            
January.

 

THE COURT.        Of this year?

 

A.            
Yes, ma’am.

 

          Viewing
the evidence in the light most favorable to the trial court’s order, we
conclude that the greater weight of the credible evidence created a reasonable
belief that Brown violated a condition of his community supervision by
frequenting the Children’s Museum.  See Rickels, 202
S.W.3d at 764; Garrett, 619
S.W.2d at 174.  We overrule both of
Brown’s issues, and we hold that the trial court did not abuse its discretion
in granting the State’s motion to adjudicate guilt.

Conclusion

We affirm the judgment of the trial court.

 

 

 

                                                                      Michael
Massengale

                                                                      Justice


 

Panel
consists of Justices Jennings, Massengale, and Huddle.

Do not
publish.   Tex. R.
App. P. 47.2(b).